UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOSE MARISCAL NAVARRETE,<br><br>　　　　　Defendant. | Case No. 18-cr-00446-HSG-1<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Defendant Jose Mariscal Navarrete moves to dismiss the indictment charging him with being an alien in the United States after deportation in violation of 8 U.S.C. § 1326. *See* Motion to Dismiss ("Mot."), Dkt. No. 18. Because all of Navarrete's collateral attacks on the underlying removal order fail, the Court **DENIES** the motion to dismiss.

**I.　BACKGROUND**

Navarrete was born in Mexico in 1974 and first came to the United States in 1980. *See* Declaration of Robin Packel ("Packel Decl."), Dkt. No. 18-1, Exhs. A, B. He became a lawful permanent resident of the United States in 1989. *See* Packel Decl. Exh. E.

On June 2, 2004, Navarrete pled guilty in San Joaquin County Superior Court to one count of rape by force or fear and one count of infliction of corporal injury to his spouse. *See* Packel Decl. Exh. F. Navarrete contends that his attorney did not advise him of the immigration consequences of his plea, including that he might lose his legal permanent resident status or be removed from the United States. *See* Declaration of Jose Mariscal Navarrete ("Navarrete Decl."), Dkt. No. 18-2, ¶ 3. Navarrete says that if he had known of the immigration consequences of his plea, he would not have pled guilty. *See id.* ¶ 4.

On September 18, 2006, the United States Immigration and Naturalization Service ("INS") issued a Notice to Appear stating that Navarrete had "been admitted to the United States, but [was]

deportable." *See* Packel Decl. Exh. H. In typewritten letters, the Notice to Appear stated that the hearing would occur on "a date to be set" and at "a time to be set"; handwritten above these typewritten entries were "9/28/06" and "8:30 am." *See id.* The field indicating the location of the immigration court was left blank. *See id.* The Notice to Appear denoted that it was served on Navarrete on September 20 and that he requested a prompt hearing. *See id.* Navarrete claims that he did not receive the Notice to Appear beforehand and that he signed it during his immigration hearing. *See* Navarrete Decl. ¶ 6.

An immigration judge conducted a removal hearing on September 28, 2006 in Imperial, California; given that Navarrete was incarcerated, he appeared by video. *See* Packel Decl. ¶ 5. At the hearing, the immigration judge told Navarrete that he was not eligible for any relief, including voluntary departure. *See id.* ¶ 8. The immigration judge ordered Navarrete removed to Mexico. *Id.* ¶ 9.

On September 20, 2018, a grand jury indicted Navarrete on one count of illegal reentry following removal, under 8 U.S.C. §§ 1326(a) and (b)(2). *See* Dkt. No. 5.

Navarrete filed this motion to dismiss on January 14, 2019. *See* Mot. The government opposed on February 4, *see* Dkt. No. 20 ("Opp."), and Navarrete replied on February 14, *see* Dkt. No. 22 ("Reply"). The Court held a hearing on the motion on February 25. *See* Dkt. No. 24.

## II. LEGAL STANDARD

A defendant may move to dismiss an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) on the ground that the indictment "fail[s] to state an offense." "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment is "capable of determination before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (internal quotation marks omitted).

A defendant charged with violating § 1326 may challenge the validity of the underlying

2

deportation order. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). To bring a successful collateral attack on an underlying deportation order, a defendant must prove that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015) (citing 8 U.S.C. § 1326(d)).

"An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotations and citations omitted).

## III. DISCUSSION

Navarrete contends that his 2006 removal order was invalid and thus cannot be relied upon to support the prior-removal element of the § 1326 indictment. *See* Mot. at 1. He advances three reasons why the 2006 removal order was invalid: (1) under *Pereira v. Sessions*, the notice to appear was deficient and did not establish jurisdiction; (2) the immigration judge denied him due process by failing to advise him that he might be eligible for discretionary relief; and (3) his attorney in his criminal case was ineffective in not advising him of the immigration consequences of his plea. Because the Court finds that Navarrete cannot establish that the removal order was invalid, it **DENIES** the motion to dismiss the indictment.

### A. The Notice to Appear Conferred Jurisdiction on the Immigration Judge

Navarrete relies on the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), to argue that because the Notice to Appear "did not specify the time or place of his hearing," the immigration judge lacked jurisdiction and thus the "removal order was jurisdictionally invalid." Mot. at 8. In *Pereira*, the Supreme Court answered the "narrow question" of whether a notice to appear that failed to specify the time or place of removal proceedings triggered the stop-time rule under 8 U.S.C. § 1229(d)(1)(A), holding that it did not. *See* 138 S. Ct. at 2210. Navarrete seeks to extend the *Pereira* holding, contending that a Notice to Appear omitting the time and place is jurisdictionally void. *See* Mot. at 8.

3

United States District Court
Northern District of California

But binding precedent from the Ninth Circuit, issued after Navarrete filed his motion but before briefing was complete, forecloses his argument. In *Karingithi v. Whitaker*, the Ninth Circuit held that a "notice to appear need not include time and date information" to vest jurisdiction in the immigration judge. 913 F.3d 1158, 1160 (9th Cir. 2019). The *Karingithi* court looked to regulations promulgated by the Attorney General, which state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court." *Id.* at 1159 (quoting 8 C.F.R. § 1003.14(a)). The court found that "*Pereira* simply ha[d] no application here" because the Supreme Court was dealing with the question of "whether the petitioner was eligible for cancellation of removal" and did not reference the jurisdictional regulations or even mention the word "jurisdiction." *Karingithi*, 913 F.3d at 1159.

In his Reply, Navarrete argues that *Karingithi* is not controlling or precedential. *See* Reply at 2–14. This Court disagrees and finds that those arguments should be directed to the Court of Appeals. *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority").

Navarrete also contends that the Notice to Appear was jurisdictionally defective under *Pereira* because it did not include the location of the hearing and that the order was fundamentally unfair because the record does not reflect that he received the Notice to Appear before the removal hearing. *See* Reply at 15–18. The Court finds these arguments unavailing. Navarrete does not provide any legal justification to explain why omitting the location from the Notice to Appear strips jurisdiction from the immigration judge but omitting the time and date does not. The time, place, and date requirements are found in the same regulation. *See* 8 C.F.R. § 1003.18(b) ("In removal proceedings . . . the [INS] shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable."). And, as the *Karingithi* court reasoned, "reading such a [jurisdictional] requirement into the regulations would render meaningless their command that such information need only be included 'where practicable.'" 913 F.3d at 1160.

1 Further, even if the Court were to credit Navarrete's assertion that he did not receive the Notice to
2 Appear until he was at the hearing (an assertion that is inconsistent with his dated signature and
3 fingerprint on the form), he would be unable to establish either a due process violation or
4 prejudice because his appearance at the hearing by video confirms that he had notice of the
5 hearing. *See United States v. Pineda-Rodriguez*, No. 17-CR-00061-LHK, 2019 WL 1370359, at
6 *6 (N.D. Cal. Mar. 26, 2019) (finding no due process violation or prejudice because "Defendant
7 had actual notice of his removal proceeding because he was detained and physically brought to his
8 removal proceeding").

In sum, the Court finds that the Notice to Appear was not jurisdictionally defective and that the removal order was not fundamentally unfair.

### B. The Immigration Judge Did Not Deny Navarrete Due Process

Next, Navarrete contends that the removal order was fundamentally unfair because the immigration judge failed to inform him that he could apply for a § 212(h) waiver. Mot. at 8–10.

An underlying deportation proceeding violates a defendant's right to due process when the immigration judge "fails to give [him] any information about the existence of relief for which [he] is 'apparently eligible,'" "erroneously tells [him] that no relief is possible," or states that he is eligible for relief, "but immediately negat[es] that statement so that it is as if he was told that he did not qualify for this relief." *Gonzalez-Flores*, 804 F.3d at 926–27. Section 212 vests discretion in the Attorney General to waive the removal of an immigrant if it "would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien." 8 U.S.C. § 1182(h)(1)(B). But this relief is unavailable "in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h).

At the time of Navarrete's removal hearing in 2006, the Board of Immigration Appeals interpreted the limitation to apply to people, like Navarrete, who gained lawful permanent resident status after entering the United States as non-immigrants. *See United States v. Guzman-Ibarez*, 792 F.3d 1094, 1100–01 (9th Cir. 2015) (citing *In re Rosas-Ramirez,* 22 I. & N. Dec. 616, 618–19

5

(B.I.A. 1999)). As both Navarrete and the government point out, the Ninth Circuit later determined that the § 212(h) limitation applies only to people who were lawful permanent residents at the time of their admission to the United States. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010). Under the post-2010 interpretation, Navarrete seemingly would have been statutorily eligible for discretionary relief under § 212(h). But the immigration judge "could not have been expected to know that relief might be possible" because the duty of the immigration judge "is limited to informing an alien of a reasonable possibility that the alien is eligible for relief"—in other words, there is no expectation of "clairvoyance" about future changes in substantive law. *See Guzman-Ibarez*, 792 F.3d at 1101 (internal quotation omitted). Because the immigration judge did not violate Navarrete's due process rights by failing to advise him about a § 212(h) waiver for which he was not eligible, the removal order was not fundamentally unfair.

### C. Counsel Was Not Constitutionally Ineffective

Finally, Navarrete argues that the 2006 removal order was invalid because his attorney in his 2004 criminal case was constitutionally ineffective for failing to inform him of the immigration consequences of his guilty plea. *See* Mot. at 11–12.

In *Padilla v. Kentucky*, the Supreme Court held that an attorney was constitutionally obligated to advise clients about the potential immigration consequences of a guilty plea. *See* 559 U.S. 356, 374 (2010). However, *Padilla* had not yet been decided at the time of Navarrete's guilty plea and the Supreme Court has held that it does not apply retroactively. *See Chaidez v. United States*, 568 U.S. 342, 358 (2013) ("Under *Teague*, defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding."). Because Navarrete's counsel was not constitutionally obligated to provide immigration advice in 2004, and *Padilla* is not retroactive, Navarrete cannot establish a violation of his Sixth Amendment right to counsel. *See, e.g.*, *United States v. Beltran-Jimenez*, 538 F. App'x 789, 789 (9th Cir. 2013).[1]

### IV. CONCLUSION

Because Navarrete has failed to demonstrate any basis upon which the 2006 removal order

---

[1] As an unpublished Ninth Circuit decision, *Beltran-Jimenez* is not precedent, but can be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

could be set aside, the Court **DENIES** the motion to dismiss the indictment.

The Court **SETS** a status conference for Monday, April 15, 2019 at 2:00 p.m. in Courtroom 2, Fourth Floor, Oakland, CA.

**IT IS SO ORDERED.**

Dated: 4/5/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge